UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


KARIMA A. KARIM,                    :
MUSA ABDUL-KARIM,                   :
            Plaintiffs,             :
                                    :
      v.                            :        CA 10-519 S
                                    :
BANK OF AMERICA, N.A.,              :
            Defendant.              :



**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

      Before the Court is Defendant Bank of America, N.A.'s Motion

to Dismiss (Docket ("Dkt.") #7) ("Motion to Dismiss" or "Motion").

Defendant Bank of America, N.A. ("Defendant" or "BOA"), contends

that the claims alleged in the Complaint (Dkt. #1) filed by

Plaintiffs Karima A. Karim ("Karima") and Musa Abdul-Karim ("Musa")

(collectively "Plaintiffs")[1] do not state a valid cause of action

and that, therefore, the Complaint must be dismissed pursuant to

Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which

relief can be granted.   Defendant further contends that Karima

lacks standing to bring any claims against BOA.

      The Motion has been referred to me pursuant to 28 U.S.C. §

636(b)(1)(B) for preliminary review, findings, and recommended

disposition.   A hearing was conducted on April 11, 2011.   After

_____

[1] For clarity, the Court uses Plaintiffs' first names.

reviewing the filings, listening to oral argument, and performing independent research, I recommend that the Motion be granted.

## I.  Synopsis of Complaint

Plaintiffs describe their claim as "House Sale Fraud." Complaint ¶ 1.  They allege that Defendant "conspired and engaged in fraud and deceptive unfair lending practices ... resulting in unjust enrichment, conversion, misrepresentation and House Sale Fraud ... to bring about a fraudulent foreclosure on said Real Property of Plaintiffs ...." Id.  In their four-count Complaint, they seek redress under the Truth in Lending Act, the Fair Credit Billing Act, the Home Ownership and Equity Protection Act, and the Fair Debt Collection Practice Act.  Id.; see also id. ¶¶ 26, 28, 30, 32.  They seek equitable relief and damages.  Id. ¶ 1.

## II.  Facts[2]

Plaintiffs presently reside at 15 Boston Street, Coventry, Rhode Island.  Complaint ¶¶ 4-5.  On July 28, 2006, Plaintiffs' family rented the residence at 15 Boston Street from Richard E. Madden ("Madden").  Complaint ¶ 7.  Musa and his wife, Latifa B. Karim ("Latifa"), signed a standard form rental agreement with

---

[2] The facts are taken from the allegations in Plaintiffs' pro se Complaint, which for purposes of the instant Motion are assumed to be true, see Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 13 (1st Cir. 2009)(stating that where question is dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the court "assume[s] the truth of all well-pleaded facts in the complaint and indulge[s] all reasonable inferences that fit the plaintiff's stated theory of liability")(internal quotation marks omitted).

Madden, who received a $1,500.00 security deposit.  Id.; see also id., Exhibit ("Ex.") A (Standard Form Rental Agreement).  A month later, on or about August 28, 2006, Madden sold the property to Musa for $229,900.00.  Id. ¶ 8; see also id., Ex. C (Single Family Purchase and Sales Agreement).  At the request of BOA, Musa enrolled in a first time buyer workshop run by Acorn Housing Corporation ("Acorn").  Id. ¶ 8; see also id., Ex. B (Mortgage Default Intervention Disclosure).  Acorn was responsible for all transactions between BOA and Musa.  Id. ¶ 9.  By successfully participating in the program, Musa became eligible for a mortgage as a first time home buyer.  See id.  BOA approved the mortgage for the full purchase price of $229,900.00.  Id. ¶¶ 9-10; see also id., Ex. E (Note).

Madden submitted the Single Family Purchase and Sales Agreement, R.I. Real Estate Sales Disclosure Form, and Warranty Deed to the bank for processing of the mortgage.  See id. ¶ 11; see also id., Ex. C, C-1 (R.I. Real Estate Sales Disclosure Form), C-2 (Warranty Deed).  According to Plaintiffs, BOA used Madden's R.I. Real Estate Sales Disclosure Form, on which he had marked "unknown" multiple times, to determine the assessed value of the property.  Id. ¶ 12; see also id., Ex. C-1.  The R.I. Real Estate Sales Disclosure Form was submitted to BOA on August 28, 2006, two days

prior to the closing date of August 30, 2006.  _Id._ ¶ 12.[3]

Also on August 28th, Plaintiffs had Griggs & Browne inspect the premises.  _Id._ ¶ 13; _see also_ _id._, Ex. D-1 (Griggs & Browne Home Inspection).  Plaintiffs state that, according to the Griggs & Brown report, there was "a tremendous amount of repairs that ha[d] to be done to the property ...."  _Id._ ¶ 13; _see also_ _id._, Ex. D-1. Plaintiffs contend that Madden "never set foot on said real property ...," _id._ ¶ 14, in order to make an assessment of the market value of the property as submitted to BOA, _see_ _id._, and contend that the property could not have been valued at $229,900.00, _id._ ¶ 15; _see also_ _id._ ¶ 24 ("[BOA] failed to acknowledge [the] true value of real property").

Plaintiffs further allege that BOA has altered Plaintiffs' mortgage payments from the agreed monthly mortgage payments of $1,674.17, on a fixed 30/40 year mortgage through Acorn, to $1,900.00, a difference of $225.83.  _Id._ ¶ 16; _see also_ _id._, Ex. F (statements regarding mortgage payments from BOA to Plaintiffs). Plaintiffs have been unable to make the mortgage payments timely or at all due to repairs to the roof from damages which occurred during August of 2006, while the property was being purchased.  _Id._ ¶ 19.  The cost of repairing the roof was in the amount of

---

[3] Plaintiffs cite to "Exhibit 'D' attached to [the] Complaint." Complaint ¶ 12.  However, no Exhibit ("Ex.") D is included with the exhibits to the Complaint, although there is an Ex. D-1, _see_ _id._, Ex. D-1.

$7,000.00.  See id.; see also id., Ex. H (receipts).  Weather
conditions caused further damage to the property, whereby water
leaked into the second floor of the house by way of the roof
causing damage to the electrical system which is also in need of
repairs.  See id. ¶ 23.  In addition, the plumbing and sewer system
on the property is "dilapidated and deteriorated ...."  Id. ¶ 24.

On October 14, 2010, BOA's attorney notified Musa concerning
foreclosure on the mortgage and note.  Id. ¶ 17; see also id., Ex.
G (Letter from Gansheimer to Musa of 10/14/10).  BOA also sought to
sell the property by January 3, 2011.  See id. ¶ 17.  BOA offered
a loan modification to Musa.  Id. ¶ 25[4]; see also id., Ex. J
(Letter from BOA to Musa of 8/10/09).  However, in Plaintiffs'
view, the modification is not in accordance with the true value of
the property, which BOA refuses to acknowledge.  See id. ¶ 25.

Plaintiffs filed the Complaint on December 28, 2010.  See Dkt.
Because of initial confusion regarding the number of Plaintiffs,[5]
on January 3, 2011, the Court issued an order ruling that there was
one Plaintiff.  See Order Ruling That There Is One Plaintiff (Dkt.
#2) ("Order of 1/3/11") at 2.  Musa was directed to sign the
Complaint personally within fifteen days of the date of the Order

[4] There are two paragraphs numbered "25" in the Complaint.  The
Court's citation here is to the first paragraph.

[5] The Complaint was signed only by Karima, but the caption included
both Karima's and Musa's names.  See Order Ruling That There Is One
Plaintiff (Dkt. #2) ("Order of 1/3/11") at 1.  In addition, the Complaint
refers both to "Plaintiff" in the singular and to "Plaintiffs" plural.
See Order of 1/3/11 at 1-2.

5

of 1/3/11 and to serve a copy of that signed Complaint upon Defendant if he wished to be a Plaintiff. Id. at 2-3. The original Complaint was replaced on January 18, 2011, by one signed by both Karima and Musa. See Dkt.

Defendant on January 21, 2011, filed a Motion for Extension to Respond to Complaint (Dkt. #5) ("Motion for Extension"), to which Plaintiffs agreed, see Motion for Extension, and which was granted by text order on February 8, 2011, see Dkt. On February 7, 2011, Defendant Bank of America, N.A.'s Motion to Dismiss (Dkt. #7) ("Motion to Dismiss") was filed. See Dkt. On March 4, 2011, Plaintiffs filed an Addendum Affirmation in Support of Complaint (Dkt. #9) ("Affirmation"). See id. BOA filed a motion to strike the Affirmation on April 6, 2011. See Defendant Bank of America, N.A.'s Motion to Strike Plaintiffs' Affirmation (Dkt. #10) ("Motion to Strike"). That same day, Plaintiffs filed objections to the Motion to Dismiss. See Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. #11) ("Karima's Objection"); Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. #12) ("Musa's Objection") (collectively "Objections").[6] As previously stated, a hearing was held on April 11, 2011. See Dkt. Subsequent to the hearing, BOA filed a response to the Objections. See BANA's Reply Memorandum in

---

[6] The Objections are substantively identical. See Karima's Objection; Musa's Objection. Accordingly, the Court cites to them as "Objections."

Support of Its Motion to Dismiss (Dkt. #13).  On May 6, 2011, the Court granted the Motion to Strike.  <u>See</u> Order Granting Motion to Strike Plaintiffs' Affirmation Dkt. #14).

## III. Law

### A.  Pro Se Status

Plaintiffs are proceeding pro se, and their Complaint is held to a less stringent standard than one drafted by a lawyer.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S.Ct. 594 (1972).  It is to be "read ... with an extra degree of solicitude."  <u>Rodi v. Ventetuolo</u>, 941 F.2d 22, 23 (1st Cir. 1991); <u>see also</u> <u>United States v. Genao</u>, 281 F.3d 305, 313 (1st Cir. 2002)("[C]ourts should read pro se complaints less strictly than lawyer-drafted pleadings").  The Court is required to liberally construe a pro se complaint.  <u>See</u> <u>Strahan v. Coxe</u>, 127 F.3d 155, 158 n.1 (1st Cir. 1997); <u>Watson v. Caton</u>, 984 F.2d 537, 539 (1st Cir. 1993).  At the same time, a plaintiff's pro se status does not excuse him from complying with procedural rules.  <u>See</u> <u>Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.</u>, 209 F.3d 18, 24 n.4 (1st Cir. 2000).

The First Circuit summarized the above law in <u>Dutil v. Murphy</u>, 550 F.3d 154 (1st Cir. 2008).  "[A]s a general rule, we are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss

of pro se claims due to technical defects." <u>Id.</u> at 158 (citing <u>Boivin v. Black</u>, 225 F.3d 36, 43 (1st Cir. 2000)(citing <u>Haines</u>, 404 U.S. at 520); <u>Instituto de Educacion Universal Corp.</u>, 209 F.3d at 23)).

### B. Rule 12(b)(6) Standard

In 2007, the Supreme Court altered the Rule 12(b)(6) standard in a manner which gives it more heft. <u>ACA Fin. Guar. Corp. v. Advest, Inc.</u>, 512 F.3d 46, 58 (1st Cir. 2008). In order to survive a motion to dismiss a complaint must allege 'a plausible entitlement to relief." <u>Id.</u> (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007)). This pleading standard applies to all civil actions. <u>Ashcroft v. Iqbal</u>, 556 U.S. ___, 129 S.Ct. 1937, 1953 (2009).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual

enhancement." Id. (citing Twombly, 550 U.S. at 557).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. (citing Twombly, 550 U.S. at 570); see also Sepúlveda-Villarini v. Dep't of Educ. of Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010)("The make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.")(citing Iqbal, 129 S.Ct. at 1950-51). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Iqbal, 129 S.Ct. at 1949). The plausibility standard is not akin to a "probability requirement," id., but it asks for more than a sheer possibility that a defendant has acted unlawfully, id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 557).

In Iqbal, the Supreme Court explained that two working principles underlay its decision in Twombly. Id. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Id. Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice. <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). Thus, although for the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> at 1949-50. While Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. <u>Id.</u> at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. <u>Id.</u> Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." <u>Id.</u> (quoting Fed. R. Civ. P. 8(a)(2)). At the same time, "<u>Twombly</u> cautioned against thinking of plausibility as a standard of likely success on the merits; the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." <u>Sepúlveda-Villarini</u>, 628 F.3d at 30.

A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth. _Iqbal_, 129 S.Ct. at 1950. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. _Id._ When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. _Id._ The _Iqbal_ court cited its analysis in _Twombly_ as illustrative of this "two-pronged approach." _Id._

## IV. Discussion

Defendant argues that Plaintiffs have failed to plead violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, _et_ _seq.,_ the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. Memorandum of Law in Support of BANA's Motion to Dismiss ("Defendant's Mem.") at 5. Defendant further contends that Karima lacks standing to bring claims regarding the mortgage loan at issue. _See_ _id._ at 13. Plaintiffs object to the Motion to Dismiss on procedural grounds, specifically that Defendant failed to file an answer pursuant to Rule 7(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). _See_ Objections at 1-2.

### A. Failure to State a Claim

Defendant contends that Plaintiffs have failed to plead claims under TILA, HOEPA, FCBA, and FDCPA upon which relief may be

11

granted.  See Defendant's Mem. at 5.  In particular, Defendant argues that the claims as pled do not meet the requirements of Rule 8 of the Fed. R. Civ. P.  See id. at 6.  Therefore, Plaintiffs' claims, in Defendant's view, must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  See id. at 5.

According to Rule 8, a "pleading that states a claim for relief must contain ... a short and plain statement showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

> [A] claim is pled sufficiently when the defendant has fair notice of the nature of the claim.  A plaintiff need not establish the substantive elements of a claim in the complaint to survive a motion to dismiss.  However, a court need not accept the legal conclusions in a complaint because such allegations are questions of law for the decision of the court.  Footless conclusions of law predicated upon unwarranted inferences in a complaint will not be admitted by the court on a Rule 12(b)(6) motion.  Because the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint, claims must fail as a matter of law if they are based on an unsupportable legal theory.

Davis v. Dillard Nat'l Bank, 1:02CV00546, 2003 U.S. Dist. LEXIS 9420, at *6-7 (M.D.N.C. June 4, 2003)(internal citations and quotation marks omitted).  Defendant contends that Plaintiffs' claims are insufficiently pled.  See Defendant's Mem. at 7.

### 1.  TILA

Plaintiffs allege in their First Cause of Action that

Defendant violated TILA.  <u>See</u> Complaint ¶¶ 25-26;[7] <u>see also</u> Defendant's Mem. at 8 ("Plaintiffs argue that [BOA] violated [TILA] by allegedly relying on an appraisal that over-valued the property.")(internal citations omitted).  Section 1601 of TILA provides in relevant part that "[i]t is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a); <u>see also</u> <u>Melvin v. U.S. Bank N.A.</u>, Civil Action No. 01-30082-FHF, 2001 U.S. Dist. LEXIS 24716, at *4-5 (D. Mass. Sept. 28, 2001)(quoting 15 U.S.C. § 1601(a)).  "[T]he design of [TILA] was to provide protection to consumers by affording them meaningful disclosure and thereby an opportunity to shop for credit.  It was not designed, nor should it be used[,] to thwart the valid claims of creditors."  <u>In re Audino</u>, 10 B.R. 135, 138 (D.R.I. 1981).

> The term "material disclosures" means the disclosure, as required by this subchapter, of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required

---

[7] There are two paragraphs numbered "25" in the Complaint.  The Court's citation here is to the second paragraph.

by section 1639(a)[8] of this title.

15 U.S.C. § 1602(u).  By its terms, TILA does not regulate appraisals.  Cf. Ng v. HSBC Mortg. Corp., No. 07-CV-5434 (RRM)(VVP), 2010 WL 889256, at *8 (E.D.N.Y. Mar. 10, 2010)(noting that TILA and HOEPA "do not apply to all high-rate mortgages" and that residential mortgage transactions are exempt from the requirements of both TILA and HOEPA); see also Discussion section IV. A. 2. infra at 14-15.  Thus, to the extent Plaintiffs allege that Defendant violated TILA by relying on an inflated appraisal of the property at issue, such claim fails.

## 2. HOEPA

According to Plaintiffs' Second Cause of Action, Defendant violated HOEPA.  See Complaint ¶¶ 27-28.  "HOEPA ... provides special protections for consumers who obtain high-rate or high-fee loans secured by their principal dwellings by requiring creditors to provide certain material information at least three days before the loan is consummated, prohibiting the use of certain loan terms, and barring specified practices."  Barbera v. WMC Mortg. Corp., No. C 04-3738 SBA, 2006 WL 167632, at *4 n.7 (N.D. Cal. Jan. 19, 2006).  Section 1639(a) requires that specific disclosures be made "for each mortgage referred to in section 1602(aa) of this title ...."  15 U.S.C. § 1639(a)(1).  According to § 1602(aa), "[a] mortgage

---

[8] The reference to § 1639 is to the Home Ownership and Equity Protection Act ("HOEPA").

referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, **other than a residential mortgage transaction ....**"  15 U.S.C. § 1602(aa)(1) (bold added).  A "residential mortgage transaction" is defined as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling **to finance the acquisition or initial construction of such dwelling.**"  15 U.S.C. § 1602(w) (bold added).

Thus, HOEPA does not apply to the mortgage note at issue, which Plaintiffs admit was used to purchase the property at 15 Boston Street.  See Ng, 2010 WL 889256, at *8 ("In plain language ... [HOEPA] does not apply to mortgages undertaken in order to purchase the property in question."); id. ("[I]t is undisputed that the two mortgages entered into by [the plaintiff] allowed him to purchase the property in question"); see also Complaint ¶ 22 ("Plaintiff[s] do acknowledge[] the mortgage and note that was transferred in exchange of real property sold by Mr. Madden"); id. ¶ 11 (noting that "the mortgage can be loan[ed] to Plaintiff and pay Mr. Madden for his real property sale").  Accordingly, because HOEPA does not apply to the mortgage at issue, Plaintiffs' HOEPA allegations fail to state a claim upon which relief can be granted.  See Ng, 2010 WL 889256, at *8 ("The defendants ... cannot be found

to have violated a statute that does not apply to the transaction at issue ....").

### 3.   **FCBA**

In their Third Cause of Action, Plaintiffs claim that Defendant violated the FCBA.  See Complaint ¶¶ 29-30.  The FCBA "provides an avenue by which a debtor may challenge perceived billing errors on any credit card account statement and procedures that a creditor must follow in responding to properly raised billing errors."  Hill v. Chase Bank USA, N.A., Cause No. 2:07-CV-82 RM, 2010 WL 107192, at *4 (N.D. Ind. Jan 6, 2010); see also Binder v. Bank of America Corp., Civil Action No. 3:10-CV-770-B, 2010 U.S. Dist. LEXIS 124208, at *10 (N.D. Tex. Nov. 22, 2010)("The FCBA provides that debtors may challenge perceived billing errors on credit card statements through a specific procedure, thus triggering the creditor's obligations under the FCBA to investigate and verify its billing."); Phan v. Accredited Home Lenders Holding Co., No. 3:09-cv-328-J-32TEM, 2010 WL 1268013, at *5 (M.D. Fla. Mar. 29, 2010)("The FCBA ... create[s] duties in a creditor to communicate with a consumer and resolve billing differences.").  However, "the FCBA's billing error section, 15 U.S.C. § 1666, applies solely to creditors of open end credit plans."  Phan, 2010 WL 1268013, at *5; see also Jacobs v. Marine Midland Bank, N.A., 124 Misc.2d 162, 167 (N.Y. Sup. Ct. 1984)(holding that "section 1666 of title 15 is only applicable to transactions under open-end

16

credit plans"). An open-end credit plan "means a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." Phan, 2010 WL 1268013, at *5 (citing 15 U.S.C. § 1602(i)); see also Wilkinson v. Wells Fargo Bank Minnesota, Case No. 06-C-1288, 2007 U.S. Dist. LEXIS 34287, at *11 n.4 (E.D. Wis. May 9, 2007)(same).

Here, Plaintiffs do not allege the existence of an open-end credit plan but, rather, base their Complaint on the mortgage note. See Phan, 2010 WL 1268013, at *5 ("[T]here is no allegation in the Amended Complaint that the creditor ... or, for that matter, the Phans or any other party reasonably contemplated repeated transactions beyond the initial mortgage loan provided to Mrs. Phan."); Wilkinson, 2007 U.S. Dist. LEXIS 34287, at *11 n.4 ("To the extent that Wilkinson alleges a mortgage loan in the complaint, that loan creates a closed-end credit relationship that is not addressed by the statute."); cf. Jacobs, 124 Misc.2d at 163 (agreeing with argument that "section 1666 of title 15 is strictly limited to open-end consumer credit plans and does not establish procedures for billing disputes that may arise in any or all consumer debtor-creditor situations"). Accordingly, because Plaintiffs "fail[] to allege the existence of an open-end credit relationship of the type governed by this provision," Wilkinson,

2007 U.S. Dist. LEXIS 34287, at *11, their FCBA claim fails, <u>see</u> <u>Phan</u>, 2010 WL 1268013, at *5 ("Thus, because Mrs. Phan's home loan is not an open end credit plan, the Phans' ... claim related to billing errors under the FCBA must be dismissed.").

### 4.   FDCPA

Plaintiffs' Fourth Cause of Action alleges that Defendant violated the FDCPA.  <u>See</u> Complaint ¶¶ 31-32.  "The FDCPA seeks to eliminate 'abusive, deceptive, and unfair debt collection practices' by regulating the type and number of contacts a 'debt collector' can make with a debtor." <u>Murungi v. Texas Guaranteed</u>, 646 F. Supp. 2d 804, 811 (E.D. La. 2009)(quoting 15 U.S.C. § 1692)).

> The FDCPA regulates debt collectors rather than creditors.  <u>Thomas v. Law Firm of Simpson & Cyback</u>, 392 F.3d 914, 916-17 (7th Cir. 2004).  The term "debt collector" means any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to *another*."  15 U.S.C. § 1692a(6)(emphasis added).  The term "creditor" means "any person who offers or extends credit creating a debt or to whom a debt is owed ...."  15 U.S.C. § 1692a(4).  Furthermore, the FDCPA exempts from its definition of debt collectors, "any officer or employee of a creditor while, *in the name of the creditor*, collecting debts for such creditor."  15 U.S.C. § 1692a(6)(A) (emphasis added).

<u>Barbera</u>, 2006 WL 167632, at *7; <u>see also</u> <u>Nool v. HomeQ Servicing</u>, 653 F. Supp. 2d 1047, 1052-53 (E.D. Cal. 2009).  "FDCPA's definition of debt collector "'does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt, so long as the debt was not in default at the time it was

assigned.'" <u>Nool</u>, 653 F. Supp. 2d at 1053 (quoting <u>Perry v.</u> <u>Stewart Title Co.</u>, 756 F.2d 1197, 1208 (5th Cir. 1985)).

Plaintiffs do not allege that BOA is a debt collector.[9] On the contrary, Plaintiffs acknowledge that BOA held the mortgage note in question. <u>See</u> Complaint ¶¶ 10-12, 25. Thus, BOA, as a creditor, is not subject to the FDCPA. <u>See</u> <u>Barbera</u>, 2006 WL 167632, at *7 ("The FDCPA is inapplicable to parties collecting their own debt."); <u>see also</u> <u>Perry</u>, 756 F.2d at 1208 ("In this case, the FDCPA is inapplicable, since neither Hammond nor FNMA is a debt collector."); <u>Nool</u>, 653 F. Supp. 2d at 1053 ("Nothing in the complaint suggests that Barclays is a 'debt collector.' Therefore, the FDCPA is not triggered by Plaintiff's allegations."); <u>Wilkinson</u>, 2007 U.S. Dist. LEXIS 34287, at *12 ("[O]ne may not bring claims under the FDCPA against creditors, as the FDCPA applies only to debt collectors."); <u>Davis</u>, 2003 U.S. Dist. LEXIS 9420, at *11 ("Crediting institutions, such as banks, are not debt collectors under section 1692a(6)(A) because they collect their own debts and are in the business of lending money to consumers. Because Dillard is a bank engaged primarily in the business of lending money to individuals instead of collecting debts, it is not subject to the [FDCPA].")(citation omitted). Accordingly,

_____

[9] Nor do Plaintiffs allege in their Complaint that BOA acquired the debt after it was in default. <u>See</u> <u>Murungi v. Texas Guaranteed</u>, 646 F. Supp. 2d 804, 812 (E.D. La. 2009)("Because Sallie Mae acquired Murungi's loan before it was placed in default, Sallie Mae is not a 'debt collector' under the FDCPA.").

Plaintiffs have failed to state a claim under the FDCPA.  See
Barbera, 2006 WL 167632, at *7 ("Thus, Plaintiff has no cognizable
claim against WMC on this ground."); Davis, 2003 U.S. Dist. LEXIS
9240, at *11-12 ("Therefore, Plaintiffs' [FDCPA claim] fails as a
matter of law.").

### 5.    Summary re Rule 12(b)(6)

Plaintiffs have failed to state a claim under TILA, HOEPA,
FCBA, and FDCPA upon which relief can be granted.  Accordingly,
Defendant's Motion should be granted and Plaintiffs' Complaint
dismissed.  I so recommend.

### B.    Statute of Limitations

Even if Plaintiffs had stated a claim upon which relief could
be granted under TILA, HOEPA, and FCBA, Defendant argues that "the
claims are untimely because they were brought outside of the one-
year statute of limitations,"  Defendant's Mem. at 6.  Thus,
"Plaintiffs' TILA and related HOEPA and FCBA claims must be
dismissed," id. at 7, as time-barred, id. at 6-7.

The statute of limitations for bringing a claim for statutory
damages under TILA is one year from the date of the occurrence of
the violation.  See 15 U.S.C. § 1640(e) ("Any action under this
section may be brought in any United States district court, or in
any other court of competent jurisdiction, within one year from the
date of the occurrence of the violation ...."); see also Madura v.
Countrywide Home Loans, Inc., 344 Fed. Appx. 509, 512 (11th Cir.

2009)(noting TILA's one-year statute of limitations under 15 U.S.C. § 1640(e)); <u>Nool</u>, 653 F. Supp. 2d at 1051 (citing 15 U.S.C. § 1640(e)); <u>Melvin</u>, 2001 U.S. Dist. LEXIS 24716, at *7 ("TILA contains a one-year statute of limitations for a damage claim ...."); <u>In re Audino</u>, 10 B.R. at 136 (noting one-year statute of limitations for actions based on TILA violations). Here, the transaction occurred on August 30, 2006, the date on which Musa signed the note. <u>See</u> Complaint, Ex. E; <u>see also</u> <u>Phan</u>, 2010 WL 1268013, at *3 ("The violation occurs when the transaction is consummated."); <u>Steimel v. Trans Union Corp.</u>, Civ. A. No. 86-6091, 1988 WL 46247, at *2 (E.D. Pa. May 10, 1988)(same). Plaintiffs filed their Complaint on December 28, 2010, <u>see</u> Dkt., well after the one-year statute of limitations had expired. Thus, Plaintiffs' TILA claims are time-barred. <u>See</u> <u>Phan</u>, 2010 WL 1268013, at *3; <u>In re Audino</u>, 10 B.R. at 136.

The same is true with regard to Plaintiffs' HOEPA and FCBA claims. <u>See</u> <u>In re Cmty. Bank of N. Virginia</u>, 622 F.3d 275, 282-83 (3rd Cir. 2010)(noting that HOEPA was enacted as an amendment to TILA and that both TILA/HOEPA damages claims are subject to a one-year statute of limitations); <u>Brown v. Bank of America, N.A.</u>, No. CIV-S-10-1758 LKK DAD PS, 2011 WL 1253844, at *6 (E.D. Cal. Mar. 31, 2011)("A HOEPA claim for damages is also subject to TILA's one-year statute of limitations."); <u>Barbera</u>, 2006 WL 167632, at *5 ("Civil penalties under TILA and HOEPA are subject to a one-year

statute of limitations."); see also Carter v. Fairbanks, Civil Action No. 09-4032 (FLW), 2009 WL 2843882, at *3 (D.N.J. Sept. 1, 2009)(noting that FCBA is part of TILA and that TILA claims have one-year statute of limitations); Dalton v. Providian Nat'l Bank, No. 3:06 CV 2309, 2007 WL 1655509, at *1, *3 (N.D. Ohio June 4, 2007)(applying TILA's one-year limitation to plaintiff's FCBA claims); Steimel, 1988 WL 46247, at *1 (stating that FCBA is part of TILA and that "[t]he limitation period contained in § 1640(e) applies to violations of the [FCBA]"). Accordingly, Plaintiffs' HOEPA and FCBA claims are untimely.

With regard to rescission, part of the relief Plaintiffs request is "for the Court to [g]rant a judgment to invalidate and/or render void ab initio, nunc pro tunc, the mortgage loan and note ...," Complaint at 6. However, the statute of limitations for rescission under TILA is three years. See 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first ...."); see also Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th Cir. 2002)(quoting 15 U.S.C. § 1635(f) and noting that Supreme Court has held that "section 1635(f) completely extinguishes the right of rescission at the end of the 3 year period"); Nool, 653 F. Supp. 2d at 1051 (noting that right of rescission is extended to three years if lender fails to provide "material disclosures" at closing); Barbera, 2006 WL

167632, at * 5 (quoting 15 U.S.C. § 1635(f)).  Because the note was signed on August 30, 2006, <u>see</u> Complaint, Ex. E, and the Complaint was filed on December 28, 2010, <u>see</u> Dkt., Plaintiffs' demand for rescission is also untimely.

The Court finds that Plaintiffs' TILA, HOEPA, and FCBA claims have been brought outside the one-year statute of limitations and are, therefore, time-barred.  Plaintiffs' request for rescission of the note is similarly time-barred.  Accordingly, Plaintiffs' TILA, HOEPA, and FCBA claims should be dismissed on this alternative basis.  I so recommend.

## C.   Standing

Defendant argues that Karima lacks standing to bring any claim relating to the mortgage loan at issue because she is not the borrower of the mortgage and note upon which the claims are based. <u>See</u> Defendant's Mem. at 13.  Therefore, Defendant contends that Karima's claims should be dismissed.  <u>See</u> <u>id.</u>

According to the United States Supreme Court, "[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." <u>Warth v. Seldin</u>, 422 U.S. 490, 498, 95 S.Ct. 2197 (1975). The key question in determining standing "is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."

Id. at 498-99 (internal quotation marks omitted); see also United States v. Richardson, 418 U.S. 166, 179, 94 S.Ct. 2940 (1974) (noting that "to invoke judicial power the claimant must have a 'personal stake in the outcome'")(quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691 (1962)).

> The Art[icle] III judicial power exists only to redress
> or otherwise to protect against injury to the complaining
> party, even though the court's judgment may benefit
> others collaterally.  A federal court's jurisdiction
> therefore can be invoked only when the plaintiff himself
> has suffered some threatened or actual injury resulting
> from the putatively illegal action ....

Warth, 422 U.S. at 499 (second alteration in original)(internal quotation marks omitted); see also id. ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").  The party invoking federal jurisdiction bears the burden of establishing standing.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130 (1992).

Here, the controversy is between Musa and BOA.  Musa is the holder of the mortgage.  See Complaint, Exs. E, F.  Only Musa's signature appears on the Note.  See id., Ex. E.  All correspondence from BOA is addressed solely to Musa.  See id., Ex. F.  Thus, although Karima may "benefit ... collaterally," Warth, 422 U.S. at 499, from this action, she has not alleged, nor can she, that she has a "personal stake," id. at 498, in the mortgage note so as to invoke the jurisdiction of this Court on her own behalf (as opposed

to Musa's),[10] see id. at 499.  Therefore, Karima has not met her burden of establishing that she has standing to bring any claims against BOA.  See Lujan, 504 U.S. at 561.  I therefore recommend that her claims against BOA be dismissed.

### D.  Plaintiffs' Objections

As noted above, Plaintiffs object to the Motion to Dismiss on the ground that Defendant failed to answer the complaint in accordance with Fed. R. Civ. P. 7(a).  See Objections at 1-2.  Due to this alleged failure, Plaintiffs seek judgment by default "and other such relief deem[ed] just and proper, fair and equitable." Id. at 2.

According to Rule 7(a):

(a) Pleadings.  Only these pleadings are allowed:
(1) a complaint;
(2) an answer to a complaint:
(3) an answer to a counterclaim designated as a counterclaim;
(4) an answer to a crossclaim;
(5) a third-party complaint;
(6) an answer to a third-party complaint; and
(7) if the court orders one, a reply to an answer.

Fed. R. Civ. P. 7(a).  Plaintiffs argue that "Defendant failed to

---

[10] Karima argues that she holds power of attorney for Musa.  See Complaint, Ex. K (Power of Attorney).  However, as was noted in the Order of 1/3/11, Karima cannot represent Musa in this matter.  See Order of 1/3/11 at 3 n.2 (citing Wertheimer v. Davies, No. CV 07-8158-MMM(E), 2009 WL 409850, at *6 (C.D. Cal. Feb. 18, 2009)("one holding a special power of attorney cannot act as an attorney for another by virtue of the power of attorney")); see also Wertheimer, 2009 WL 409850, at *2 ("While a person may represent his own interests in a legal proceeding, he cannot represent another person unless he is an active member of the State Bar.").

submit an answer ... according to the local rules, but submitted a dispositive motion (motion to dismiss) and not an answer as requested by Defendant." Objections at 1. Plaintiffs note that Defendant requested "an additional 14 days extension of time to answer ...," id., and that Plaintiffs "agreed to allow time for an answer to the [C]omplaint without prejudice," id.

Strictly speaking, Defendant did not request an extension within which to file an answer exclusively. Rather, the Motion for Extension "requests an extension of 14 days to February 7, 2011[,] to **answer or otherwise plead** to Plaintiff's Complaint in the above-captioned matter." Motion for Extension (bold added).

More importantly, Rule 12(b) provides in relevant part that:

(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. **But a party may assert the following defenses by motion:**
      (1) lack of subject-matter jurisdiction;
      (2) lack of personal jurisdiction;
      (3) improper venue;
      (4) insufficient process;
      (5) insufficient service of process;
      (6) **failure to state a claim upon which relief can be granted**; and
      (7) failure to join a party under Rule 19.
**A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.** ...

Fed. R. Civ. P. 12(b) (bold added); see also Murungi, 646 F. Supp. 2d at 807 ("Rule 12(b) motions must be filed before responsive pleadings.")(citing Fed. R. Civ. P. 12(b)). Further, Rule 12(a) states that:

(a) Time to Serve a Responsive Pleading.
(1) *In General*. Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:
    (A) A defendant must serve an answer:
        (i) within 21 days after being served with the summons and complaint; or
        (ii) if it has timely waived service under Rule (4)(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

....

(4) Effect of a Motion. Unless the court sets a different time, **serving a motion under this rule alters these periods as follows**:
    (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or
    (B) if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

Fed. R. Civ. P. 12(a) (bold added).

Accordingly, Defendant's answer is not due until after the Court rules upon the instant Motion to Dismiss. Therefore, Defendant has not violated the federal or local rules, and Plaintiffs are not entitled to a judgment by default on the basis of an alleged failure to answer the Complaint.

**V.    Summary**

The Court finds that Plaintiffs have failed to state a claim under TILA, HOEPA, FCBA, and FDCPA upon which relief can be granted. The Court further finds that Plaintiffs' TILA, HOEPA, and FCBA claims are time-barred. In addition, Karima lacks standing to

27

pursue any claims against BOA based on the mortgage loan at issue. Finally, Defendant has not violated the Fed. R. Civ. P. or local rules by filing a motion to dismiss in lieu of an answer.

## VI. Conclusion

For the reasons explained above, I recommend that the Motion to Dismiss be granted. To the extent that Plaintiffs seek judgment by default, I recommend that their request be denied. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
May 6, 2011